Filed 03/25/26

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-00145

| Harley Breer, Jr. v Nicholas Deml |
|---|

## ORDER ON SUMMARY JUDGMENT

Petitioner Harley Breer, Jr., an inmate in state custody, filed this action to challenge a decision by the Commissioner of the Department of Corrections to deny him release on community supervision furlough. Now pending before the court are the parties' competing summary judgment motions. Because the court concludes the Commissioner acted within his broad statutory authority to determine whether a sentenced inmate may be released on furlough, the Commissioner's motion for summary judgment is granted and petitioner's cross-motion for summary judgment is denied.

### Background

The facts set forth below are undisputed. Petitioner is currently serving a sentence after pleading guilty to two counts of obstruction of justice and unlawful mischief. Petitioner reached his minimum sentence on the obstruction of justice counts in late 2024 and will reach his maximum in 2030. On the unlawful mischief count, petitioner received a sentence of five years to life, all suspended, with a 20-year term of probation set to expire in May 2043. Petitioner has a lengthy history of past criminal charges, parole violations, and probation violations including multiple convictions.

In January 2024, the Department told petitioner that he was required to complete Risk Intervention Services programming before being considered for release. This programming is intended to help offenders "learn and develop knowledge, skills, and abilities to reduce [the] risk of committing new crime and support . . . successful community reentry." Pet.'s Exh. B, at DOC 0286. Petitioner successfully completed the programming without incident.

Because petitioner is designated a "Release Sensitive Notification" case, the Department held a central office case staffing on September 4, 2024, to determine whether petitioner, after completing his minimum, should be recommended for parole or allowed to serve any portion of his remaining sentence on community supervision furlough. The case staffing committee declined to recommend petitioner for parole because of his past criminal history while on probation and home confinement. The committee believed "furlough will provide a better option to enact, maintain, and adjust community conditions as required to manage [petitioner]'s risk to public safety," but determined that petitioner could not be

1

released to or reside in Washington County because of victim concerns. Resp.'s Exh. A., at DOC 905. Petitioner was denied parole by the Parole Board on November 20, 2025.

Following the parole board hearing, the Department worked with petitioner to identify potential residences for him if released on community supervision furlough. One option considered was the Judd House, a transitional housing facility in Newport. Another option was a private rental in Canaan.

Petitioner's preference was to live in Canaan. The Department told petitioner it would approve the residence, which ultimately led petitioner to decline an available bed in the Judd House on or about December 24, 2024. The Department then informed Orleans County law enforcement officials that petitioner would be released the following week to Canaan, which is in Essex County. Petitioner's planned release and criminal history was reported in the local media.

On December 31, Essex County State's Attorney Vincent Illuzzi sent the Department an email expressing concern about petitioner's planned release to Canaan and questioning why he had not been notified or consulted. Illuzzi's concerns were also reported in the local media.[1] Some residents in Canaan thereafter started an online petition to try and stop petitioner's planned release to their community. Among the concerns raised were Canaan's lack of a local police force, its rural nature, and its proximity to the New Hampshire and Canadian border. Department staff also consulted with the Governor's Office concerning the situation.

In response to these concerns, on or about January 2, 2025, the Department determined it would no longer release petitioner to the residence in Canaan, would undertake a comprehensive review of petitioner's eligibility for community supervision furlough, and that petitioner would remain incarcerated while this review was underway.

On January 3, 2025, then-Commissioner Nicholas Deml issued a memo to petitioner's file indicating that petitioner "will not be placed on [community supervision furlough] based on his risk to the public's and his victim's safety, his history of repeated noncompliance with community supervision, and . . . the likelihood of his fleeing from the jurisdiction of the Department of Corrections and the Vermont criminal justice system." Resp.'s Exh. A, at DOC 344. The Commissioner's memo noted recent information received by the Department that petitioner planned to contact victims in Washington County after his release and also expressed concern about the proposed release to Canaan, given its lack of a police force. In declining to approve petitioner's release on community supervision furlough, the Commissioner noted that petitioner did not meet the criteria to receive a risk containment designation under the Department's policies, but the Commissioner relied on

---

[1] The Department later stated that Illuzzi was notified of petitioner's potential release on furlough (but not in Canaan specifically) on or about November 19, 2024. Resp.'s Exh, A, at DOC 0571.

2

his general authority under 28 V.S.A. § 102(b)(1) and (2) to supervise the Department and administer its programs. The Commissioner thereafter issued a press release announcing and explaining his decision.

Petitioner filed this complaint on January 10, 2026, to challenge the Commissioner's decision to deny him release on community supervision furlough.

## Analysis

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hier v. Slate Valley Unified Sch. Dist.*, 2025 VT 2, ¶ 8 (quoting V.R.C.P. 56(a)). All reasonable doubts and inferences are resolved in favor of the nonmoving party. *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272.

As noted above, the relevant facts are undisputed. The legal questions before the court are (i) whether the Commissioner's actions are subject to judicial review in this case, and (ii) whether Commissioner Deml had the authority to unilaterally reverse the decisions of lower-level Department staff approving petitioner's release on community furlough.

Rule 75 permits judicial review of "[a]ny action or failure or refusal to act by . . . any department . . . that is not reviewable or appealable under Rule 74 . . . if such review is otherwise available by law." V.R.C.P. 75(a). The Vermont Supreme Court has explained that "otherwise available by law" includes review that would have been available "under the traditional writs for extraordinary relief." *Maple Run Unified Sch. Dist. v. Vermont Hum. Rts. Comm'n*, 2023 VT 63, ¶ 10, 218 Vt. 496. Petitioner claims the relief he seeks is in the nature of the traditional writs of mandamus and certiorari.

The court assumes without deciding that this case falls within the nature of mandamus review. Petitioner claims he had a right to be released with which the Commissioner lacked discretion to interfere. On the unique facts of this case, the conditions for mandamus review are inextricably intertwined with the substantive question of the Commissioner's authority. *See id.*, ¶ 11 ("Mandamus is an extraordinary remedy appropriate only when three conditions are met: (1) when a party has a clear and certain right to the action sought by the request for [mandamus]; (2) [the request] is for the enforcement of ministerial duties, not those that involve the exercise of an official's judgment or discretion; and (3) there is no other adequate remedy at law."). The court will thus consider the substantive question of whether the Commissioner possesses the legal authority he claims.

The Legislature has vested the Commissioner of the Department of Corrections with broad authority to "supervise the administration of the Department" and to "exercise supervisory power over and to establish and administer programs and policies . . . for the correctional treatment of persons" in the Department's custody. 28 V.S.A. § 102(b)(1), (2).

"When a person is convicted of an offense and the court commits him or her to a term of imprisonment, the commitment shall be to the custody of the Commissioner," and the "Commissioner shall have the authority to designate the place of confinement where the sentence shall be served." 28 V.S.A. § 701(a), (b).

The Legislature has further required the Department to "establish an offender reintegration process that requires offenders to be held accountable to their victims and the community," under which an "offender who participates in the reintegration process . . . may be placed in the community under the Department's supervision for the remainder of the sentence if the Department is satisfied that the offender is demonstrating progress in his or her reentry programs and that the offender does not present an unreasonable risk to his or her victims or to the community at large." 28 V.S.A. § 721. Accordingly, the Department "may release" an offender from a correctional facility to serve their remaining sentence in the community if the offender has served the minimum term of their sentence, is ineligible or has been denied parole, and "agrees to comply with such conditions of supervision the Department, in its sole discretion, deems appropriate." 28 V.S.A. § 723(a). "The offender's continued supervision in the community is conditioned on the offender's commitment to and satisfactory progress in his or her reentry program and on the offender's compliance with any terms and conditions identified by the Department." 28 V.S.A. § 723(b). The Legislature has established a comprehensive framework for determining how the Department may modify or terminate an offender's furlough status once granted, and how such decisions may be challenged. 28 V.S.A. § 724.

The Legislature thus has given the Commissioner broad discretion to determine where a sentenced offender serves his or her sentence and whether any portion of that sentence may be served in the community. 28 V.S.A. §§ 102(b), 701, 721, 723. The question then becomes whether the discretion was abused in this case. Petitioner argues that it was for essentially two reasons. First, petitioner argues that the decision to release him on furlough was made by lower-level Department officials acting consistently with Department policy, and that it was an abuse of discretion for the Commissioner to act outside the policy and reverse that decision. And second, petitioner argues that he had acquired a liberty interest in his expected release on furlough that could not be denied without due process, which he was not provided.

These arguments fail. The statutes relevant to this case do not limit the Commissioner's discretion to determine that a particular offender is not suitable for community supervision furlough. "The Legislature knows how to impose such limitations, but chose not to do so" here. *See Parker v. Gorczyk*, 170 Vt. 263, 268 (1999). Indeed, as noted above, the Legislature has done so in the furlough revocation context but has chosen to leave the Commissioner's discretion intact with respect to the initial decision whether to permit an offender to serve their sentence in the community. And even if the Department's policy guidelines could circumscribe the Commissioner's statutory authority in this area,

4

they do not purport to do so. *See* DOC Policy 348(A)(1) (noting that DOC "may release" a person to furlough and describing when a person is "eligible" for such release). While it is easy to imagine a situation where this authority might be exercised unlawfully—for example, if furlough was denied because of an offender's political viewpoints or race—such facts are not presented here. Even if the process here left much to be desired, there is nothing inherently unlawful with an executive official responding to safety concerns raised by the press, the public, and other government officials. *Cf.* Vt. Const. ch. 1, art. 6 ("That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them.").

And while "[t]he Department has not contested—and many courts have concluded—that *revocation* of community supervision furlough implicates a protected liberty interest and therefore triggers the right to due process," *see, e.g.*, *Parker v. Deml*, 24-CV-02721 (Vt. Super. Ct. Mar. 12, 2025) (emphasis added), those holdings have not been extended to the furlough denial context. The court declines to do so here. As both the Vermont Supreme Court and the United States Supreme Court have observed, "there is a crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one desires." *Parker*, 170 Vt. at 271 (quoting *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 9 (1979)).

The court accordingly concludes that the Commissioner acted within his statutory authority when he intervened in this case to prevent petitioner's release on community supervision furlough. The apparently unprecedented nature of the intervention does not by itself make it unlawful. Whether to restrict the Commissioner's authority in this area is a policy question for the Legislature.

### Order

The Department's motion for summary judgment is GRANTED and petitioner's cross-motion for summary judgment is DENIED.

Electronically signed on: 3/24/2026 pursuant to V.R.E.F. 9(d)

Benjamin D. Battles
Superior Court Judge